**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

S.L. SAKANSKY & ASSOCIATES, INC.

    Plaintiff,

vs.                                                  Case No. 3:05-cv-708-J-32MMH

ALLIED AMERICAN ADJUSTING
COMPANY OF FLORIDA, LLC, et al.,

    Defendants.

**<u>ORDER</u>**[1]

This case is before the Court on defendants Allied American Adjusting Company, LLC ("Allied Adjusting"), Allied American Adjusting Company of Florida, LLC ("Allied Florida"), and Allied Williams Company, Inc.'s ("Allied Williams") (collectively referred to as "Allied") Motion to Dismiss for Improper Venue (Doc. 3); plaintiff S.L. Sakansky & Associates, Inc.'s ("Sakansky") Motion to Drop Defendant Allied Williams Without Prejudice (Doc. 23); and Sakansky's Motion to Submit Supplemental Authority (Doc. 30). Sakansky responded to the motion to dismiss (Doc. 14); Allied responded to the motion to drop Allied Williams (Doc. 24), and the motion to submit supplemental authority (Doc. 31).

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

**I.     INTRODUCTION**

Sakansky filed a three count complaint alleging breach of contract, unjust enrichment, and seeking an accounting; subject matter jurisdiction is based on diversity of citizenship. (Doc. 1). The dispute arises out of an alleged oral agreement wherein Allied agreed to pay Sakansky for its insurance adjusting services during the 2004 hurricane season. (Id. at ¶ 16). The business relationship at issue essentially originated with Citizen's Property Insurance Corporation ("Citizen's"), the last resort wind damage insurer in Florida, which hired Allied Adjusting to adjust insurance claims in Florida during the 2004 storm season. When the hurricane situation in Florida worsened in 2004 and the number of claims increased, Allied Adjusting hired Sakansky to work as a subcontractor to assist in adjusting Citizen's claims. When Citizen's received a claim, it would assign the claim to Allied, which would, in turn, assign it to Sakansky. Allied Adjusting paid Sakansky a portion of the fee Allied Adjusting received from Citizen's for the adjusting work. In this suit, Sakansky alleges that Allied has failed to pay all Sakansky is owed under the oral agreement.

## II. PROCEDURAL HISTORY

The parties, perhaps with undue haste, filed numerous papers with the Court relating to whether or not venue properly lies in this Court, and whether or not there is personal jurisdiction over co-defendant Allied American. A discussion of the order in which these papers were filed will assist in parsing the salient issues. On September 12, 2005, after Sakansky filed and served the Complaint, Allied moved to dismiss pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure, asserting improper venue under 28 U.S.C. § 1391(a). (Doc. 3). Allied did not specifically aver that it was also moving to dismiss the case against Allied American for lack of personal jurisdiction under Rule 12(b)(2).

On November 14, 2005, Allied filed a Motion for an Evidentiary Hearing, which petitioned the Court to allow the parties to present evidence on "(i) whether Allied Williams Company resides [in the Middle District of Florida] or is subject to personal jurisdiction [in the Middle District of Florida] under § 1391(a)(1) and (c), and (ii) whether the action should be transferred for forum non conveniens under § 1404(a)." (Doc. 16). On December 22, 2005, the undersigned granted the motion and set an evidentiary hearing on Allied's motion to dismiss. (Doc. 17).

On January 12, 2006, even though its motion to dismiss was pending, Allied filed an answer asserting lack of venue and forum non conveniens as affirmative

defenses. (Doc. 22). That same day, Sakansky filed a motion to drop Allied Williams as a party to the suit asserting its belief that Allied Williams was improvidently sued. (Doc. 23). The very next day, Allied opposed this motion taking the position that Allied Williams was an indispensable party to the suit under Rule 19, Federal Rules of Civil Procedure. (Doc. 24).

On January 19, 2006, the Court held the evidentiary hearing on the motion to dismiss. During the hearing, the parties presented live testimony primarily addressing whether venue was appropriate under 28 U.S.C. § 1391(a). In making their presentations, the parties also addressed whether there was personal jurisdiction over Allied Williams to the extent that analysis is intertwined with the venue analysis. Then, the day after the hearing, Allied filed an amended answer, this time asserting an additional affirmative defense that Allied Williams is not subject to personal jurisdiction in Florida. (Doc. 26).

The parties admitted at the hearing that this rapid-fire motion practice was primarily designed to gain a strategic advantage in the venue dispute. However, when all is said and done, the Court is left to address the merits of the pending motions.[2]

---

[2] There has been a delay in the resolution of this motion in part because the parties in the meantime engaged in an apparently unsuccessful mediation.

## III. DISCUSSION

### A. Venue

28 U.S.C. § 1391(a) provides that venue is proper in a diversity action, in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

At the hearing, Sakansky advised that it sought to establish venue under subsection (a)(2), not (a)(1)[3] or (a)(3). Thus, the undersigned must determine

---

[3] Even though Sakansky has specifically limited the venue analysis to § 1391(a)(2), the undersigned notes the potential applicability of § 1391(a)(1). Under § 1391(a)(1), venue is appropriate in "a judicial district where any defendant resides, if all defendants reside in the same State." Section 1391(c) provides that "a defendant that is a corporation shall be deemed to 'reside' in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Because Allied likely admitted personal jurisdiction when it moved to dismiss for lack of venue, and did not specifically include Rule 12(b)(2) (lack of personal jurisdiction) as grounds for dismissal, see Fed.R.Civ.P. 12(h)(1), it is possible that Allied subjected itself to venue in this district pursuant to 28 U.S.C. § 1391(a)(1) and (c) because of that waiver. District courts throughout the country have decided this issue differently. Some have equated a personal jurisdiction waiver to a waiver of venue under § 1391(a)(1) and (c) when corporate defendants are involved. See Centerville Alf, Inc. v. Balanced Care Corp., 197 F. Supp. 2d 1039, 1048 (S.D. Ohio 2002); Computer Express Int'l, Ltd. v. Micronpc, LLC, 2001 WL 1776162, *4 (E.D.N.Y. 2001). Others have held that the language

whether "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.  28 U.S.C. § 1391(a)(2).  "[O]nly those acts and omissions that have a close nexus to the wrong" are properly considered when undertaking the "substantial part" analysis.  Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003).  "When material acts or omissions within the forum bear a 'close nexus' to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue."  Daniel v. American Bd. of Emergency Med., 428 F.3d 408, 433 (2d Cir. 2005) (citing Jenkins Brick).  Notably, the venue statute does contemplate some cases in which venue will lie in two or more districts.  See Jenkins Brick, 321 F.3d at 1371; see also Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004); Wright & Miller, Federal Practice and Procedure § 3806 ("it is now absolutely clear that there

---

in § 1391(c), i.e. that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction *at the time the action is commenced*," requires an independent determination of whether there is personal jurisdiction at the moment the cause of action was initiated, even if later in litigation the corporate defendant waives the personal jurisdiction defense.  See Bell v. Classic Auto Group, Inc., 2005 WL 659196, *5 (S.D.N.Y. 2005); DSMC, Inc. v. Convera Corp., 273 F. Supp. 2d 14, 19 (D.D.C. 2002).  While the Court notes this interesting tension in the law, which does not appear to have been resolved by the Eleventh Circuit or district courts within, the undersigned does not have to make this determination because plaintiff expressly states that it does not seek to establish venue under § 1391(a)(1).  The Eleventh Circuit has addressed this issue in the context of venue under 28 U.S.C. § 1400(a); however, the Court notes the language under that statute may not necessarily be synonymous with that under 28 U.S.C. § 1391(c).  See Palmer v. Braun, 376 F.3d 1254, 1259-60 (11th Cir. 2004) (holding when a party waives personal jurisdiction, such a waiver equates to a waiver of venue under § 1400(a)).

can be more than one district in which a substantial part of the events giving rise to the claim occurred").

Here, Sakansky is an Illinois corporation with its primary offices in California and Arizona; all three defendants' home offices are in Alabama. Sakansky and Allied Adjusting began their business relationship in the fall of 2004 (during the unusually catastrophic hurricane season that affected much of Florida).[4] Sakansky, via its Marketing Director, Robert Beller, contacted George Barton, the then Vice President of Marketing for Allied Adjusting, to initiate a business relationship. During a telephone conversation between Beller and Barton, Sakansky and Allied Adjusting reached an oral agreement under which Allied Adjusting would pay Sakansky ninety percent of the applicable fee schedule to adjust claims for Citizen's in Florida in 2004.[5] When the oral agreement was reached, Beller (the Sakansky representative) was on the phone in Arizona, and Barton (the Allied Adjusting representative) in Alabama. Under the agreement, Sakansky deployed approximately forty to fifty adjusters to Jacksonville, Orlando and Tampa; most of the work occurred in Orlando and Tampa,

---

[4] Prior to the formation of this business relationship, Sakansky worked directly with Citizen's. However, when the hurricane situation worsened in Florida, Citizen's suggested that to continue to adjust Citizen's claims Sakansky work as a subcontractor for Allied Adjusting.

[5] The oral agreement was originally between Sakansky and Allied Adjusting. However, at some point during 2004, Allied Florida formed as a subsidiary of Allied Adjusting, and Sakansky performed work under the same oral agreement with Allied Florida. Allied Adjusting and Allied Florida shared the same principals.

both also within the Middle District of Florida.[6]

Allied argues, *inter alia*, that the alleged key "omission" that gives rise to the claims in this case is Allied's alleged failure to pay Sakansky for its work in Florida, and that the act of not paying "occurred" in Alabama, where Allied and its bank accounts are located. This interpretation of § 1391(a)(2) is too restrictive. While the Court notes that the Eleventh Circuit in Jenkins Brick cites with approval language in Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995), which provides, "[Congress] meant to require courts to focus on relevant activities of the defendant, not of the plaintiff," merely determining where the defendant physically cut the checks for payment is not the end of the venue analysis. Indeed, the Jenkins Brick decision also criticized the approach of U.S. Surgical Corp. v. Imagyn Medical Technologies, 25 F. Supp. 2d 40, 45 (D. Conn. 1988), which had considered a number of factors in undertaking its venue analysis, including "where the contract was allegedly breached." Jenkins Brick, 321 F.3d at 1372.

Rather, under Jenkins Brick, the "substantial part" analysis is driven by an overall look at whether material "acts and omissions" that occurred in this district bear a "close nexus" to the claims. The claims at bar (breach of contract, accounting and unjust enrichment) center around whether Allied Adjusting and Allied Florida properly paid Sakansky for the work it performed in Jacksonville, Orlando, Tampa, and other

---

[6] Allied Adjusting currently has offices in Tampa and Ft. Lauderdale and had those same offices during the 2004 storm season.

locations throughout Florida. To reconcile this dispute, the crux of this case will be how much adjusting work Sakansky actually performed in Florida, and whether Allied properly or fairly compensated Sakansky for it. Because a significant amount of the proof of whether Allied Adjusting and Allied Florida properly paid Sakansky for its work is directly derived from the work performed (or not performed) in this district, the undersigned finds the required substantiality and "close nexus" under § 1391(a)(2) and Jenkins Brick.[7] Cf. Jenkins Brick, 321 F.3d at 1372-73 (holding venue not proper in Alabama because the non-compete agreement between the parties, which was the center of the dispute, "was breached when the [defendant] failed to perform his post-employment obligation to refrain from competing against [plaintiff] - conduct which occurred only in Georgia"); Morgan v. North Miss. Med. Ctr., 403 F. Supp. 2d 1115, 1123 (S.D. Ala. 2005) (finding the required close nexus for venue under § 1391(b)(2)[8] for venue in Alabama because the occurrences in Alabama, even though not as prevalent as those in Mississippi, would "figure prominently in the proof at trial").

In jockeying for position to prevail on the venue issue, the parties also litigate whether Sakansky can properly drop Allied Williams from this case. To preclude

---

[7] It may well be, as Allied contends, that venue under § 1391(a)(2) is also proper in the Southern District of Alabama. However, as previously stated, supra page 6, venue may be appropriate under this provision in more than one place.

[8] Section 1391(b)(2) applies to cases in federal court that are not solely based on diversity, and contains the exact same language as § 1391(a)(2), which is relevant to this case.

Sakansky from dismissing Allied Williams under Rule 41(a)(1)(i), Federal Rules of Civil Procedure, or dismissing the case and refiling against only Allied Adjusting and Allied Florida, Allied filed an answer to the complaint (even though a motion to dismiss was pending on behalf of all defendants) before Sakansky filed any notice of dismissal.  After Allied filed the answer, Sakansky filed a motion to dismiss Allied Williams stating it improvidently sued Allied Williams.  Sakansky opposed the motion claiming Allied Williams is an indispensable party under Rule 19, Federal Rules of Civil Procedure.

At the hearing, Allied admitted that Allied Williams is not an indispensable party and that Allied originally opposed the motion to drop Allied Williams to preserve its venue arguments.  While Allied has withdrawn the indispensable party argument, it maintains that the presence of Allied Williams in this case must be considered for purposes of venue, because venue is determined on the facts at the time the case is filed.  See Flowers Indus., Inc. v. FTC, 835 F.2d 775, 777 n. 1 (11th Cir. 1987) (analyzing where a corporation "resides" under 28 U.S.C. § 1391(e) and determining the location of incorporation at the time the complaint is filed is determinative for purposes of venue) (internal citations omitted); A.J. Taft Coal Co., Inc. v. Barnhart, 291 F. Supp. 2d 1290, 1303 (N.D. Ala. 2003) (assessing the propriety of venue under § 1391(e) based on residence of parties at the time the action is initiated).

Those cases and others cited therein, whether interpreting §§ 1391(a), (b), or

-10-

(e), concern the "residence" of parties for venue purposes at the time the action is initiated, not whether a "substantial part of the omissions or events" occurred in a particular district under § 1391(a)(2). Thus, because § 1391(a)(2) controls the venue determination here, Allied Williams' presence in the case at the time the complaint was filed does not affect the analysis.

Nevertheless, it became evident during the evidentiary hearing that Sakansky does not have a basis to keep Allied Williams in the case, and that dismissal of Allied Williams, as Sakansky has requested, is proper. Allied Adjusting and Allied Florida conceded at the hearing that venue would have been proper in this district had they been the only defendants named in this case originally. Thus, the Court's decision (i.e. Allied Williams is dismissed, Allied Adjusting and Allied Florida remain and venue is proper) reaches the same result, though via a much more difficult road.

### B. Transfer of Venue

As an alternative ground to dismissal, Allied seeks a change of venue pursuant to 28 U.S.C. § 1404(a). That statute provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under a § 1404(a) motion to transfer, the moving party has the burden of establishing that the suggested forum is more convenient for purposes of transfer. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). While the Court may

recognize a number of factors relevant to transfer, "ultimately, the resolution of the question is for the Court's discretion." Cortez v. First City Nat. Bank of Houston, 735 F. Supp. 1021, 1023 (M.D. Fla. 1990).

"In making the determination of whether the requested transfer will be in the interest of justice and for the convenience of the parties and witnesses, the Court must strike a balance on convenience between those elements which weigh in favor of transferring. . . and those which favor allowing plaintiff's choice of forum to stand undisturbed." Cortez, 735 F. Supp. at 1023 (internal quotations and citations omitted). Traditionally, however, federal courts accord considerable deference to the plaintiff's choice of forum. In re RICOH Corp., 870 F.2d 570, 573 (11th Cir. 1989).

No doubt, the Southern District of Alabama, where Allied resides, is a proper venue, and would be more convenient for Allied, but not Sakansky. While the Middle District of Florida is not overwhelmingly convenient for either party, it is nevertheless a proper venue and the district in which Sakansky chose to file suit. Further, based on the claims at issue, a significant portion of the evidence involves events that occurred in this district (including Jacksonville, Tampa and Orlando). It is also likely that the case will in part depend upon the testimony of current and former Citizen's employees, who are located in Florida (Jacksonville and Tallahassee). There being no "convenience" to litigating in Alabama that outweighs litigating in this district, the Could will not disturb Sakansky's chosen venue. Thus, the motion to transfer is

denied.[9]

Accordingly, it is hereby **ORDERED**:

1. Defendants Allied American Adjusting Company, LLC, Allied American Adjusting Company of Florida, LLC, and Allied Williams Company, Inc.'s Motion to Dismiss for Improper Venue, or Alternatively, to Transfer (Doc. 3) is **DENIED**.

2. Plaintiff S.L. Sakansky & Associates, Inc.'s Motion to Drop Allied Williams Without Prejudice (Doc. 23) is **GRANTED**.

3. Plaintiff S.L. Sakansky & Associates, Inc.'s Motion to Submit Supplemental Authority (Doc. 31) is **GRANTED**. To the extent the presented supplemental authority had any bearing on the Court's decision, the undersigned considered it and argument presented in that motion, as well as the arguments presented in Allied's response.

4. The parties should confer, complete and file the attached Case Management Report by no later than **Friday, April 28, 2006.**

---

[9] The Court notes that other divisions within the Middle District (Tampa and Orlando) appear to have as much of a relationship to this case as Jacksonville. However, because neither of those divisions have an appreciably greater relationship to the case than Jacksonville, the case will remain in this division.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of April, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

t.
Copies to counsel of record